

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-369-CR

MICHAEL ANTHONY DELLATORE                          APPELLANT

V.

THE STATE OF TEXAS                                           STATE

------------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Michael Anthony Dellatore appeals his conviction for possession with intent to deliver a controlled substance of four grams or more, but less than 200 grams of methamphetamine. In two points, Dellatore challenges the

---

[1] *See* Tex. R. App. P. 47.4.

legal and factual sufficiency of the evidence to support his conviction. We will affirm.

## II. FACTUAL BACKGROUND

Officer Bret Morgan with the Euless Police Department testified that he first encountered Dellatore in 2003 when Dellatore was a passenger in a truck that was leaving a residence at 1003 Collin Drive, where Officer Morgan was investigating complaints that drugs were being dealt. Officer Morgan investigated the residence again in 2004 when another drug complaint was made and then met with the occupants of the residence—Marie Burris[2] and Dellatore—in March 2006, when they made a harassment report and verified their address as 1003 Collin Drive.

As part of his ongoing investigation, Officer Morgan conducted a trash investigation[3] of the trash from 1003 Collin Drive on December 1, 2006. Within the trash, Officer Morgan found multiple "deal bags" with a powdery residue and a lot of small "roaches" or small, smoked marijuana cigarettes. He

---

[2] The reporter's record uses the spelling "Burrus"; however, we use the spelling "Burris" because it appears on the documents in the clerk's record.

[3] Officer Morgan testified that a trash investigation consists of the police going to a location suspected of narcotics activity on the day that the trash is scheduled for pick up and taking the trash from that location back to the police department to sift through it for evidence of narcotics activity.

also found mail addressed to Marie Burris and Michael Dellatore.[4]  Based on the items found in the trash and Officer Morgan's ongoing investigation of 1003 Collin Drive, he prepared and submitted a search warrant affidavit.[5]  Officer Morgan testified at trial that he did not have personal knowledge that Dellatore was living at 1003 Collin Drive.  However, he connected the dots — Dellatore had said he was living there in March when he filed the harassment report, and then the mail from the trash run on December 1, 2006, indicated that Dellatore was still living there.  Based on the search warrant affidavit, a judge issued a

---

[4] The mail that was addressed to Dellatore consisted of solicitation-type mail or junk mail; an AT&T bill was addressed to Burris.

[5] In addition to describing the items found in the trash, Officer Morgan included the following facts in his search warrant affidavit:

(1) On September 17, 2003, he followed up on a complaint that Burris was dealing narcotics from 1003 Collin Drive and stopped a green pick-up truck as it left the residence.  As a result of the stop, he arrested Burris for possession of a prohibited weapon and possession of methamphetamine.  He noted that Dellatore was a passenger in the truck during this stop.

(2) On June 26, 2004, Officer Morgan was contacted by a confidential informant who stated that Burris was in possession of a large amount of methamphetamine.  Officer Morgan observed two people enter a vehicle parked in the driveway of 1003 Collin Drive.  Another officer stopped that vehicle, which was driven by Scott Braden.  Braden and Burris, who was the passenger, were arrested for possession of methamphetamine.

(3) On March 23, 2006, Burris and Dellatore contacted Officer Morgan to make a harassment report and verified that they lived at 1003 Collin Drive in Euless.

3

search warrant for 1003 Collin Drive. Officer Morgan thereafter contacted Detective Murphree with the narcotics task force.

Officer Todd Murphree, who was assigned to the narcotics task force of the Euless Police Department testified that on December 1, 2006, he executed the search warrant at 1003 Collin Drive and that six to eight officers accompanied him. As they approached the house, Burris came out of the house. Officer Murphree entered the house and made sure that there were no others in the house before bringing Burris back in and detaining her in the front living area.

Office Murphree searched the bathroom and a bedroom that had been turned into an office. In the room that functioned as an office, Officer Murphree found a digital scale sitting on top of the desk, along with a small notebook with a rose on the front that contained names written in it with numerical values beside them. Inside the left-hand drawer of the desk, he located one baggie, containing a white crystal substance that he recognized to be methamphetamine. In that same drawer, he found a larger Zip-lock baggie that had hundreds of empty baggies in it. Office Murphree also found a traffic citation dated October 9 issued to Dellatore and bearing the address of 1003 Collin Drive. Officers also located documents with Burris's name on them in the office. The documents found closest to the drugs belonged to Burris. On a wall

4

shelving unit, he found other baggies, containing what appeared to be methamphetamine. He also found a black wallet, in which there were three more baggies that contained methamphetamine.

Officer Murphree did not recall seeing any items in the bathroom that obviously belonged to a man, but he said he was not searching for such items. A picture of the bathroom was admitted into evidence showing that the toilet seat was in the upright position; no explanation was provided for the seat's position, i.e., use, cleaning, or otherwise.

In the other bedroom, where more methamphetamine was located, officers noticed a pair of men's boots and a baseball cap. One of the photographs that was admitted into evidence depicted a tray located inside one of the bedrooms. The tray contained some marijuana residue and a digital scale, which Officer Murphree testified is used to weigh narcotics. During the search, officers found $394 in the black wallet in the office, $220 in the desk drawer in the office, and $642 in Burris's purse.

While officers were searching the residence, Dellatore arrived, and the officers detained him. Dellatore told Officer Murphree that Dellatore had some framed football jerseys on the wall in the house that belonged to him and that he and Burris had slept in one of the bedrooms the previous night. Officer

5

Murphree also recalled that Burris had said that she and Dellatore were common-law husband and wife.

Officer Murphree testified that "user amount" is an amount, usually a gram, that someone would ingest for his personal use, whereas "dealer amount" refers to "intent for redistribution or sale, something more than just for personal use." He further testified that based on his experience and training, the quarter ounce of methamphetamine found in this case, along with the presence of hundreds of baggies, digital scales, and the ledger notebook, indicate a dealer quantity rather than a personal use quantity. Pursuant to office policy, Officer Murphree did not take any fingerprints on any of the evidence.

Sharon Patton, a drug chemist with the Fort Worth Police Department Crime Lab, testified that she tested three baggies containing a powdery substance. The baggie labeled J-1 measured 0.12 grams, the baggie labeled J-2 measured 1.3 grams, and the baggie labeled J-3 measured 0.01 grams; each of these baggies contained methamphetamine. Additionally, State's Exhibit 6, Item E measured 5.58 grams containing methamphetamine.

After hearing the evidence, the jury found Dellatore guilty of the offense of possession of a controlled substance, namely methamphetamine, of four grams or more but less than 200 grams with intent to deliver as charged in the

6

indictment.  After hearing evidence during the punishment phase, the trial court sentenced Dellatore to thirty years' confinement.  This appeal followed.

### III.  SUFFICIENCY STANDARDS OF REVIEW

### A.  Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).  Instead, we

7

"determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. The standard of review is the same for direct and circumstantial evidence cases. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

## B. Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great

8

weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the

appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## IV. SUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTION FOR POSSESSION OF CONTROLLED SUBSTANCE

In his two points, Dellatore argues that the evidence is legally and factually insufficient to support the jury's finding that he possessed the methamphetamine at issue.[6] Specifically, Dellatore argues that the evidence proves that Burris was the only person present when the police arrived and that the links present do not show a knowing possession by Dellatore.

The State's indictment charged that Dellatore "did then and there intentionally or knowingly possess a controlled substance, namely: methamphetamine, of four grams or more, but less than two hundred grams, including any adulterants or dilutants, with intent to deliver said controlled substance."[7] *See* Tex. Health & Safety Code Ann. § 481.112(a). To prove

---

[6] Because Dellatore challenges solely on the possession element of the offense and does not challenge the "intent to deliver" element, we need not address the sufficiency of that aspect of his conviction.

[7] Possession with intent to deliver methamphetamine is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams. Tex. Health & Safety Code Ann. § 481.112(d) (Vernon 2003).

possession of a controlled substance, the State had to prove that Dellatore (1) exercised actual care, custody, control, or management over the contraband and (2) that he knew the matter possessed was contraband. *See id.* §§ 481.002(38), 481.115(a) (Vernon 2003); *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981); *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.).

The State does not have to prove that the accused had exclusive possession of the contraband; joint possession is sufficient to sustain a conviction. *See Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). When there is no evidence that the appellant was in exclusive control of the place where the contraband was found, however, the State must offer additional, independent facts and circumstances that "link" the accused to the contraband. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Deshong*, 625 S.W.2d at 329; *see also Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006) (stating that "[w]e have used that term 'affirmative links,' but we recognize that 'affirmative' adds nothing to the plain meaning of 'link.' Henceforth, we will use only 'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence"). The links between Dellatore and the contraband must be

established by either direct or circumstantial evidence.  *See Poindexter*, 153 S.W.3d at 406.

No formula of facts exists to dictate a finding of links sufficient to support an inference of knowing possession. *See Taylor*, 106 S.W.3d at 830.  It is the logical force of the evidence, and not the number of links, that supports a fact-finder's verdict. *See Evans*, 202 S.W.3d at 166.  Possible links include but are not limited to the following:  (1) whether the defendant was present when the drugs were found; (2) whether the drugs were in plain view; (3) the defendant's proximity to and the accessibility of the drugs; (4) whether the defendant was under the influence of drugs when arrested; (5) whether the defendant possessed other contraband or drugs when arrested; (6) whether the defendant made any incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of drugs; (10) whether other contraband or other drug paraphernalia was present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12.

In this case, the baggies of methamphetamine that Officer Murphree located were found after Officer Morgan had performed a trash investigation at 1003 Collin Drive that confirmed that drugs were being dealt from that location. Although the testimony at trial showed that Burris was the only person present when officers arrived to conduct the search, the evidence established that Dellatore arrived during the search. Officers confiscated over $1,200 in cash in addition to the baggies containing methamphetamine powder, deal baggies, ledger notebook, and a digital scale, which the officers found scattered throughout the office that Dellatore would have had access to by virtue of his living in the house. Dellatore pointed out to officers the bedroom where he had slept the previous night and admitted that the framed football jerseys that hung on the wall in the house belonged to him. As further evidence that Dellatore lived at 1003 Collin Drive, officers located mail and a traffic citation that reflected Dellatore's name and the Collin Drive address.

Officer Murphree testified, however, that he did not take any fingerprints from the baggies or scales and that he did not attempt to match the men's boots that were found to Dellatore's shoe size.

Although this evidence satisfies less than the full series of indicia listed above, viewing the evidence in a favorable or neutral light, the foregoing evidence is sufficient to enable a rational fact-finder to link Dellatore to the

13

methamphetamine found at 1003 Collin Drive. *See Washington v. State*, 902 S.W.2d 649, 653 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (holding that the evidence presented, which showed that appellant owned the restaurant at which cocaine was found in his office and that other employees had a key to the office, provided links from which the jury could rationally find that appellant controlled the cocaine and knew the cocaine was contraband). We hold that the evidence is legally and factually sufficient to link Dellatore to the methamphetamine. *See Poindexter*, 153 S.W.3d at 405, 412; *Ramos v. State*, Nos. 02-07-00118-CR, 02-07-00119-CR, 2008 WL 623777, at *5 (Tex. App.—Fort Worth Mar. 6, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that evidence was legally and factually sufficient to link appellant to cocaine residue found in water heater closet in the tattoo parlor that appellant operated in the garage connected to his home); *Berrum v. State*, No. 11-01-00011-CR, 2002 WL 32341848, at *2–3 (Tex. App.—Eastland Jan. 10, 2002, no pet.) (not designated for publication) (holding that evidence was legally and factually sufficient to link appellant to cocaine that was found in a closet underneath the stairs, which was conveniently accessible to appellant); *Thompson v. State*, No. 07-99-00403-CR, 2000 WL 987303, at *1–2 (Tex. App.—Amarillo July 18, 2000, no pet.) (not designated for publication) (holding that, although evidence satisfied less than the full series of indicia, evidence

14

was legally sufficient to link appellant to cocaine found in a space heater in hall closet); *Matthews v. State*, No. 01-97-01348-CR, 1999 WL 233510, at *4–5 (Tex. App.—Houston [1st Dist.] Apr. 22, 1999, pet. ref'd) (not designated for publication) (holding that evidence was legally and factually sufficient to support jury's finding that appellant was guilty of possession of cocaine that was found in bedroom closet that appellant shared with his wife). *Cf. Pierce v. State*, No. 03-06-00492-CR, 2007 WL 4269796, at *15–16 (Tex. App.—Austin Dec. 5, 2007, no pet.) (mem. op., not designated for publication) (holding that evidence was legally insufficient to connect appellant to methamphetamine lab at house because evidence revealed that appellant had moved and was no longer living at residence where lab was found). We overrule Dellatore's two points.

## V. CONCLUSION

Having overruled both of Dellatore's points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 9, 2008

15